THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EUGENE BOUSKA, Defendant-Appellant.

First District (5th Division)   No. 81—2448

Opinion filed October 7, 1983.

Laurence J. Bolon, of Frank, Melamed & Bolon, Ltd., of Chicago, for

appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and Edward Barron, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Following a jury trial, defendant Eugene Bouska was found guilty of aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4) and was fined $1,000 for severely beating his girlfriend, Susan Forsberg. On appeal, he contends that: (1) the trial court erred in denying his motion for a new trial because the State's failure to disclose that it had a letter from Mrs. Forsberg which stated that the charges against defendant were not true violated the rules of discovery; (2) the trial court erred in granting the State's motion *in limine* which prohibited defendant from introducing evidence of the continued relationship between defendant and Mrs. Forsberg after the alleged crime; and (3) defendant was not proven guilty beyond a reasonable doubt. We affirm.

Defendant met Mrs. Forsberg in November 1978 when he was head of the flight instruction group at the Schaumburg airport. Mrs. Forsberg enrolled in the flight school to take lessons. Eventually she and defendant became close friends and they began seeing each other romantically. Mrs. Forsberg would stay in defendant's apartment for long periods of time, although she would leave early in the morning and would never spend the night. Defendant resided at the airport because he also had night watchman duties.

The couple began to take trips together, including extended plane trips to Florida. Defendant would allow Mrs. Forsberg to sit in the left hand seat of the aircraft to enable her to gain flight experience. On August 1, 1980, they flew to Land O'Lakes, Wisconsin, spent the night at a lodge and then flew to Oshkosh. The trip lasted six days. Defendant testified that he enjoyed the excursion and that Mrs. Fursberg told him that "it was the ultimate of her life." He also said that before the trip she advised that he be very cautious because she did not want her mother or father to know that she was traveling with him. She feared they would tell her husband and if he knew he would kill her. Mr. Forsberg had threatened defendant several times before the trip. He was unaware, however, that his wife and defendant had been planning their rendezvous for three months.

The events which precipitated this action began when defendant

and Mrs. Forsberg attended a fund-raising party in Highland Park, Illinois, on August 9, 1980. Mrs. Forsberg testified that while she was there a man who she did not know began a conversation with her, commented favorably on her appearance and then reached for her and touched her arm. Mrs. Forsberg was standing near the edge of an asphalt floor and when she recoiled from the man's approach she inadvertently stepped back into the mud. Defendant, who was nearby, came over to her, helped her out of the mud and asked whether Mrs. Forsberg knew who the man was. Defendant escorted her to his car to continue their conversation. Forsberg testified that inside the car, defendant forcibly grabbed her hair and hit her head against the window. She said that defendant hit her face with his fists and caused her mouth to bleed. They left the park shortly afterwards and defendant drove to his apartment. Forsberg testified further that they continued to argue in the apartment and that defendant struck her again and accused her of being interested in another man. While she was lying on the bed, defendant allegedly jumped on her with his feet.

Defendant testified that Mrs. Forsberg's injuries were caused after they arrived in his apartment. He stated that they took a shower together, but because they had both been drinking they lost their balance and fell out of the bathtub. Mrs. Forsberg hit her head on a formica vanity top and the middle of her body fell over an open toilet seat. Defendant carried Mrs. Forsberg to the bed and offered to take her to the hospital but she refused. Mrs. Forsberg allegedly became despondent, complained about having so many problems with her home and marriage and, according to defendant, she became hysterical. When she reached for a revolver that he kept under the bed, they began to wrestle. Defendant admitted that he jumped on Mrs. Forsberg's abdomen but explained that he did this in order to prevent her from picking up the gun. He said he did not intentionally injure her ribs, strike her or jump on her pelvis.

Defendant eventually drove Mrs. Forsberg to her home and then left. When her husband saw her physical condition he took his wife to the police station where she filed a complaint. Mrs. Forsberg then checked into a hospital. She remained there for 2½ days. An examination revealed bruises on her face and a black and blue mark over her left eye. There was tenderness over her pelvic area. X rays revealed fractured ribs. A urinalysis disclosed that there was blood in Mrs. Forsberg's urine. Dr. Lawrence Gluskin, who examined Mrs. Forsberg in the emergency room, testified that blood in the urine of a woman who is not menstruating caused him to worry about a possible laceration to the kidney.

Mrs. Forsberg's babysitter, Diane Carbone, testified that when Mrs. Forsberg returned home from her date with defendant her eyes were swollen and she had a bruised face. Carbone stated that although Mrs. Forsberg was not staggering, her walk was stiff and less than normal. After closing arguments by counsel for both sides, defendant was found guilty of aggravated battery.

Two months after trial, on July 22, 1981, defendant filed a post-trial motion for a new trial alleging that the State had failed to reveal in its answer to his motion for discovery that it had received a letter from Mrs. Forsberg in which she stated that the charges against defendant were untrue and that she did not wish to prosecute. The letter in question was addressed to William J. Kunkle, Jr., an assistant State's Attorney. It read as follows:

> "October 6, 1980
>
> Please be advised that I am the complaining witness in the case entitled People of the State of Illinois -vs- Eugene Bouska. At the time the complaints were signed, I had just completed a lengthy [sic] hospital stay and it is my opinion that the allegations and facts as charged are untrue. It is my desire not to continue in the prosecution of this matter. I have previously made these statements to ASA Edward Ozog as well as other prosecutors. I feel that it is necessary that I make this request in writing to formalize my position. If you have any questions or comments, please feel free to contact me.
>
> Sincerely,
>
> [signed]
>
> Suzanne M. Forsberg
>
> cc: Bernard Carey
>      Ed Ozog
>      William A. Swano."

In rebuttal to defendant's motion the State argued that it could not be charged with suppressing this evidence because the notation at the bottom of the letter "cc: Bernard Carey [State's Attorney of Cook County]; Ed Ozog [assistant State's Attorney]; and William A. Swano [defendant's attorney of record]" indicated that Swano had received a copy of the letter. The State alleged further that Swano had generated the letter and had it typed in his office.

Defendant's motion was denied. This appeal followed.

OPINION

In our judgment the controlling issue herein is defendant's conten-

tion that he was entitled to a new trial because the State violated the rules of discovery when it failed to disclose the letter from Mrs. Forsberg. The State responds that defense counsel was in fact in possession of the letter and that even if he was not, the overwhelming evidence of defendant's guilt rendered the letter insignificant.

■■ In considering whether an alleged trial error violates a defendant's right to disclosure guaranteed by Illinois Supreme Court Rules and by the United States Constitution, it is necessary to first consider the nature of the defendant's request. If the request was specific, the failure to respond "is seldom, if ever, excusable." (*United States v. Agurs* (1976), 427 U.S. 97, 106, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399.) On the other hand, if the request was general, there is constitutional error only if the omitted evidence creates a reasonable doubt of guilt that did not otherwise exist. (427 U.S. 97, 108, 49 L. Ed. 2d 342, 352, 96 S. Ct. 2392, 2399; *People v. Witherspoon* (1979), 69 Ill. App. 3d 391, 398, 388 N.E.2d 1.) The Supreme Court has characterized a request which asked for "anything exculpatory" as a general request. 427 U.S. 97, 106-07, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399.[1]

■ The record reveals that defendant filed a pretrial motion for discovery on September 24, 1980, which requested, *inter alia*, "any evidence which is favorable to defendant." The State answered that it was unaware of any such evidence or witnesses.[2] Under the criteria enunciated in the *Agurs* decision, we consider defendant's request to have been general because it did not give the State notice of exactly what the defense desired. The question now turns to whether the suppressed evidence was material.

As stated above, the standard of materiality articulated by the Supreme Court in *Agurs* is that the evidence must create a reasonable doubt of guilt that did not otherwise exist. The mere possibility that

---

[1]The rule in *Agurs* as well as that of a prior Supreme Court case which decided this issue, *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, has been codified in Illinois by Supreme Court Rule 412(c). Rule 412(c) requires that following a written motion "the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." (73 Ill. 2d R. 412(c).) Also, Supreme Court Rule 415(b) imposes a continuing duty to comply with the rules of discovery. If additional material or information is discovered during trial, the court must be notified. 73 Ill. 2d R. 415(b).

[2]The State received Mrs. Forsberg's letter approximately one month later in October; however, it neither amended its answer to discovery nor revealed the existence of the letter to defendant or his attorney.

an item of undisclosed information might have aided the defense or might have affected the outcome of the trial does not establish materiality in the constitutional sense, however. (*United States v. Agurs* (1976), 427 U.S. 97, 109-10, 49 L. Ed. 2d 342, 353, 96 S. Ct. 2392, 2400.) It has been further held that the suppressed evidence must be unknown to the defense and that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt, whether or not the additional evidence is considered, there is no justification for a new trial. (427 U.S. 97, 112-13, 49 L. Ed. 2d 342, 354-55, 96 S. Ct. 2392, 2401; *People v. Kosik* (1982), 110 Ill. App. 3d 930, 940, 443 N.E.2d 238.) Additionally, there is no exception to the disclosure rule for the innocent or inadvertent suppression by the State of favorable evidence since the controlling question is the materiality of the evidence. *United States v. Agurs* (1976), 427 U.S. 97, 110, 49 L. Ed. 2d 342, 353, 96 S. Ct. 2392, 2401; *People v. Hovanec* (1979), 76 Ill. App. 3d 401, 416, 394 N.E.2d 1340.

Our review of the record in the case at bar reveals that in considering defendant's motion for a new trial, the court applied the standard of materiality set forth above. The court ruled that the State met its burden of proof that defendant was guilty beyond a reasonable doubt and that there was more than enough evidence upon which the court or jury could enter a finding of guilty. As to the question of whether defense counsel had received a copy of the letter, the court reasoned that because the letter included a "cc" (carbon copies) notation, copies had "apparently" been forwarded to defendant's attorney of record, William Swano.[3] The court further stated that defendant was responsible for knowing the contents of his attorney's file of his case, that he must have been advised by his attorney when the attorney received the letter and that defendant either knew or should have known that his attorney had received the letter. It concluded that for the reasons just stated, defendant had the responsibility during trial to make reference to the letter.

■ Although we agree with the court's decision denying defendant's motion for a new trial, we do not believe that the "cc" notation was conclusive evidence that the letter had been received. Rather, we are of the opinion that a new trial was not warranted because the evidence failed to establish that Swano did not receive the letter. He was

---

[3] Defendant was represented by counsel at the preliminary hearing of this cause on August 20, 1980. Swano entered his appearance on September 24, 1980. He withdrew his appearance and James P. Tatooles entered his substituted appearance as defense counsel on February 4, 1981. Tatooles represented defendant at trial, which commenced March 24, 1981.

not called to testify and James P. Tatooles, who represented defendant at trial and at the hearing on the motion for a new trial, never affirmatively denied that he did not have a copy. Instead, the thrust of Tatooles' argument was that because the letter exonerated defendant, it was material and should have been disclosed by the State. This argument, without more, was unpersuasive and did not merit the granting of a new trial.

Defendant next contends that evidence of his continued relationship with Mrs. Forsberg was relevant and should have been admitted to show that her testimony and conduct were inconsistent. He argues that it is unlikely that a victim would continue an intimate relationship with the person who allegedly kidnaped and beat her and that evidence of their intimate relationship was relevant to show "the whole picture of the situation." We disagree.

The relevancy of a fact in controversy or a matter in issue as evidence of a possible defense lies within the sound discretion of the trial court. The court may reject evidence which it determines to be of little probative value because of its uncertainty or conjectural nature. (*People v. Yuknis* (1979), 79 Ill. App. 3d 243, 249, 398 N.E.2d 258.) If the record indicates a sufficient basis for the trial court's decision and there is no abuse of discretion to the prejudice of the defendant, the trial court's ruling will not be disturbed on appeal. *People v. Therriault* (1976), 42 Ill. App. 3d 876, 889, 356 N.E.2d 999.

■ In the case at bar, the trial court stated that it would not permit defendant to question Mrs. Forsberg about their continued intimate relationship because the probative value of such testimony would be outweighed by its prejudicial effect. The court ruled that the relationship was irrelevant to the issue of what happened on August 9, 1980, the date of the altercation. This ruling was correct. The standard for determining the relevancy of evidence is that it will be admissible if it renders a matter in issue more or less probable. (*People v. Yuknis* (1979), 79 Ill. App. 3d 243, 248, 398 N.E.2d 258.) Testimony detailing defendant's continued intimate sexual relationship with Mrs. Forsberg would shed little or no light on whether defendant injured her on the night in question, however. The admission of such highly volatile and inflammatory testimony would draw the jury away from the important issue of whether defendant was guilty of aggravated battery. Excluding this testimony therefore did not prejudice defendant on the issue of his guilt. By limiting the scope of cross-examination in this regard the trial court properly exercised its sound discretion.

■ As his final argument on appeal, defendant contends that he

was not found guilty beyond a reasonable doubt. We disagree for the following reasons.

A jury's determination of guilt will not be disturbed unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Stokes* (1979), 71 Ill. App. 3d 773, 780, 389 N.E.2d 1352.) In the instant case, our examination of the testimony leads us to believe that contrary to defendant's contention, the evidence, both circumstantial and direct, shows that defendant intentionally or knowingly inflicted great bodily harm. We believe it is improbable that Mrs. Forsberg sustained such severe injuries in the manner in which defendant alleged. The testimony reveals that Mrs. Forsberg was hospitalized for 2½ days because of a bruised face, a black eye, fractured ribs and internal injuries. Her testimony, coupled with that of her babysitter, who immediately noticed that Mrs. Forsberg's face was swollen and that of the physician who conducted an examination at the emergency room of the hospital leads us to believe that defendant intentionally injured her and was guilty beyond all reasonable doubt. Based on the foregoing evidence and the reasonable inferences drawn therefrom, we cannot say that the jury's verdict was improbable or unsatisfactory. Accordingly, defendant's conviction is affirmed.

Affirmed.

SULLIVAN and MEJDA, JJ., concur.