THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KEVIN L. SIMMONS, Defendant-Appellant.

Fifth District   No. 5—84—0283

Opinion filed October 23, 1985.

Randy E. Blue and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:
Defendant, Kevin L. Simmons, was convicted of rape, deviate sex-

ual assault, home invasion, armed violence, residential burglary and armed robbery after a jury trial in Jackson County circuit court. He was sentenced to four concurrent 25-year terms of imprisonment on the rape, deviate sexual assault, home invasion and armed violence convictions. He was also sentenced to a 10-year term for residential burglary, to run concurrently with the 25-year sentences, and a 20-year term for armed robbery, to run consecutively to the other sentences.

Defendant on appeal contends (1) the court erred by denying his motion for mistrial based upon the State's failure to disclose prior to trial that the victim had retracted a prior statement, (2) the court erred in refusing to give Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.10 (2d ed. 1981), (3) the State failed to prove him guilty beyond a reasonable doubt, (4) the sentences were excessive and there was no basis for the consecutive sentence for armed robbery, and (5) his conviction for armed violence must be vacated because that offense was included in the offense of rape. We affirm in part and vacate in part.

The victim, living in Carbondale, returned to her apartment around 10:30 p.m. on June 18, 1983. She visited briefly with her boyfriend, and they placed $40 into a glass jar in the living room, the money having come from a singing engagement performed that night by the woman. Her boyfriend left before midnight to go to work at a local bakery.

The victim went to bed around 1:30 a.m., leaving a light on in the living room, but closing her bedroom door. Later, in the darkness of the morning of June 19, she awoke to see a man in her room taking off his pants. He told her to spread her legs, but the victim did not move. Then he told her, "Spread your legs or I will kill you." He held a gun to her head, then sodomized and raped her. The victim testified her attacker did not ejaculate. While still on top of her, he asked if there was any money in the apartment. After the victim initially hesitated, the attacker lifted the gun and again held it to her head. The victim then told him to look in the living room. Before leaving the bedroom, the man looked around the floor as if he had lost something, but never recovered anything. Then he went to the living room, and as he did so, the victim pushed through a window screen in the bedroom and ran for help. As she escaped, she heard her screen door slam and heard four shots fired. Neighbors testified they heard this disturbance around 3:30 a.m.

The victim later reported the glass jar with the $40 was missing along with $23 from her purse and two gold rings.

The victim positively identified defendant at trial as the perpetrator. A police expert testified that a thumbprint found on a fan in the living room was that of defendant. A palm print on a bench in the living room was also found to belong to defendant. A police expert testified entry had been gained through the living room window, with the intruder placing his hand on the bench as he came into the apartment. The victim testified the fan had been on top of the bench in front of her living room window. After the attack, the fan was moved from its normal position, as was the bench. The living room window screen had been removed from the outside. A police expert testified there was a very high degree of probability that hairs from a cap found in the victim's bedroom came from defendant.

Defendant testified at trial that he was at a party near the victim's apartment the night of the attack, but that he did not commit the crimes alleged. He stated he was home in bed at 3:30 a.m., the time of the attack. His girlfriend also testified she was with him most of the night, and that they went home around 3 a.m. and were in bed together at 3:30 a.m. Several other defense witnesses testified as to defendant's presence at the party and the fact that he was driven home at approximately 3 a.m.

Defendant also presented expert testimony showing that seminal material found in the victim, on her sheets, and on her clothing, could not have come from defendant. The State showed this seminal material could have come from the victim's boyfriend.

■ Defendant first claims error in the denial of his motion for mistrial based upon the State's failure to disclose to the defense prior to trial the fact the victim had retracted a prior statement. The victim testified at trial that she and her boyfriend had had sexual intercourse on her bed on the two nights preceding the rape. She indicated they had sex after the last cleaning of the sheets. On cross-examination, the victim admitted that her original statement to police was that she had not had sex with anyone between the last time the sheets were cleaned and the time of the attack. The victim acknowledged having told the prosecutor of her changed recollection a couple of months before trial.

Defendant contends the State had a duty to disclose the victim's new version of the condition of the sheets. Supreme Court Rule 412(a)(i) provides for disclosure to defendant's counsel, upon written motion, the following:

> "the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing sub-

stantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements. Upon written motion of defense counsel memoranda reporting or summarizing oral statements shall be examined by the court *in camera* and if found to be substantially verbatim reports of oral statements shall be disclosed to defense counsel \*\*\*." 87 Ill. 2d R. 412(a)(i).

Where a defendant alleges that the State failed to produce such a statement, the actual existence of the memorandum must be shown. (*People v. Kurena* (1980), 87 Ill. App. 3d 771, 776, 410 N.E.2d 277, 283.) Here, there was no showing such a memorandum existed, and "Rule 412 does not require that every conversation with witnesses during the course of investigation be reduced to writing." *People v. Davis* (1982), 105 Ill. App. 3d 129, 132, 434 N.E.2d 13, 15.

While disclosure was thus not required here under Supreme Court Rule 412(a)(i), we also analyze defendant's contention under the broader scope of Supreme Court Rule 412(c), which provides:

"Except as is otherwise provided in these rules as to protective orders, the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the öffense charged or would tend to reduce his punishment therefor." (87 Ill. 2d R. 412(c).)

This rule codifies constitutional standards set out by the United States Supreme Court. *People v. Bouska* (1983), 118 Ill. App. 3d 595, 599 n.1, 455 N.E.2d 257, 260 n.1.

We note first this case involves a general, rather than specific, discovery request. (*People v. Witherspoon* (1979), 69 Ill. App. 3d 391, 398, 388 N.E.2d 1, 6.) In the case of a general discovery request, we look to see whether the omitted evidence creates a reasonable doubt of guilt that did not otherwise exist. *People v. Bouska* (1983), 118 Ill. App. 3d 595, 599, 455 N.E.2d 257, 260.

"A fair trial is denied a defendant where the withheld evidence is favorable to him and is material as to his guilt or innocence." (*People v. Goka* (1983), 119 Ill. App. 3d 1024, 1032, 458 N.E.2d 26, 32.) Materiality here means the evidence must create a reasonable doubt of guilt that did not otherwise exist, and does not mean the mere possibility that it might have helped the defense in some way. (119 Ill. App. 3d 1024, 1032, 458 N.E.2d 26, 32.) The omitted evidence must be unknown to the defendant and evaluated in the context of the entire record. If there is no reasonable doubt about guilt, whether or not the additional evidence is considered, there is no justification for a

new trial. *People v. Bouska* (1983), 118 Ill. App. 3d 595, 599-600, 455 N.E.2d 257, 261.

We cannot see how the victim's statement raised a reasonable doubt of guilt that did not otherwise exist. Defendant knew before trial that the expert evidence indicated the seminal material did not come from him. Defendant also knew prior to trial that the victim had told police her attacker did not ejaculate.

Defendant has also failed to show any prejudice. He was able to use this information at trial to impeach the victim by showing she had changed her story since the time of the attack, and he could not have used this information in any way more favorable to his defense even if he had known of the statement before trial. We have reviewed this omission in the context of the entire record. Whether or not the additional evidence is considered, we find no reasonable doubt about guilt. Consequently, we find no reversible error in the denial of defendant's motion for mistrial.

■ Defendant's second claim of error was the trial court's refusal to give IPI Criminal 2d No. 3.10. The instruction states:

> "An attorney has the right to interview a witness for the purpose of learning the testimony the witness will give."

Defendant argues that the instruction should have been given because the victim testified on cross-examination that she had declined defense counsel's request for an interview. Defendant misinterprets the purpose of IPI Criminal 2d No. 3.10. The Committee Note to the instruction states: "This instruction should not be given unless there has been examination eliciting prior interviews." In *People v. Nahas* (1973), 9 Ill. App. 3d 570, 579, 292 N.E.2d 466, 472, the court found it was proper to have given this instruction because "[t]he defense attorney raised the issue of the propriety of the State's Attorney interviewing witnesses before their testimony ***."

The Committee Note for IPI Criminal 2d No. 3.10 refers the reader to Illinois Pattern Jury Instruction (IPI), Civil, No. 2.06 (2d ed. 1971), which instructs as follows:

> "An attorney has a right to interview a witness for the purpose of learning what testimony the witness will give. The fact that the witness has talked to an attorney and told him what he would testify to does not, by itself, reflect adversely on the truth of the testimony of the witness."

The Notes on Use for IPI Civil 2d No. 2.06 state: "This instruction may only be given where the evidence shows that a witness or party has been interviewed by an attorney." This civil instruction has been interpreted to be "an attempt to offset the ancient trick in which an

attorney questions a witness as to his interview with opposing counsel, often stated in a way to imply to the witness and jurors that this is an impropriety." *Dorf v. Egyptian Freightways, Inc.* (1962), 39 Ill. App. 2d 2, 4, 188 N.E.2d 103.

Based upon these court interpretations of these instructions, it is clear IPI Criminal 2d No. 3.10 is aimed at preventing adverse inferences from a witness speaking with opposing counsel prior to trial. In the present case, defense counsel was not requesting the instruction to offset any inference from any interview between the victim and the State. Defendant was instead attempting to raise a question regarding the witness' credibility based on her refusal to talk with defense counsel. The credibility of witnesses was covered by another instruction given to the jury.

■ Defendant's third issue presented for review claims the State failed to prove him guilty beyond a reasonable doubt. He first attacks the victim's in-court identification of him as her attacker. He contends the identification was not credible and reliable.

The general principles regarding identification testimony are stated in *People v. Danis* (1984), 129 Ill. App. 3d 664, 667, 472 N.E.2d 1194, 1196-97:

> "[T]he identification testimony of a single witness is sufficient to support a conviction provided the witness is credible and viewed the accused under circumstances that would permit the making of a positive identification. [Citations.] The standard for a positive identification is whether the witness was close enough to the accused for a sufficient length of time under conditions that provided adequate opportunity for observation. [Citation.] Discrepancies in the testimony or omissions of detail do not destroy the validity or credibility of an identification; rather, they affect the weight of the testimony and are evaluated by the trier of fact. [Citation.]
>
> A witness usually arrives at an identification based upon the total impression the individual made upon him, not by distinguishing separate features. [Citation.] It is clear that where the in-court identification of the accused is positive, precise accuracy in describing facial characteristics, hair, height and weight is unnecessary. [Citation.] The question whether the identification is reliable is based upon an examination of the totality of the circumstances. *** The reliability of the identification is a factual matter for the jury's determination. [Citation.]"

Defendant claims the victim did not have a good opportunity to view the rapist at the time of the crime, particularly noting that the

only light on at the time was in the living room and not in the bedroom, that the victim is nearsighted and was not wearing her glasses at the time of the attack. The evidence was sufficient to show that the victim was close enough to her attacker and had sufficient light to observe him and to sufficiently identify him. The fact her initial description of her attacker was not precisely accurate only affects the weight of the identification testimony and does not destroy its credibility. *People v. Danis* (1984), 129 Ill. App. 3d 664, 667, 472 N.E.2d 1194, 1197.

Defendant also attacks the victim's identification by pointing to her failure to positively identify him in *photographic* lineups prior to trial. This too merely affects the weight of her in-court identification and does not negate its credibility. (*People v. Philson* (1979), 71 Ill. App. 3d 513, 521, 389 N.E.2d 1223, 1229.) We note that the trial was the first time the victim had a chance to view the defendant in person since the time of the attack. Her in-court identification was based partially upon his mannerisms which she remembered from the attack. Further, the fact nine months passed between the attack and the in-court identification affects only the weight of the victim's testimony and does not destroy its credibility. *People v. McDowell* (1984), 121 Ill. App. 3d 491, 498, 459 N.E.2d 1018, 1024.

■ Defendant next attacks the fingerprint evidence. He first cites *People v. Rhodes* (1981), 85 Ill. 2d 241, 249, 422 N.E.2d 605, 608, which held "[i]n order to sustain a conviction solely on fingerprint evidence, fingerprints corresponding to the fingerprints of the defendant must have been found in the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that the fingerprints were impressed at the time the crime was committed."

First, the present case is not based *solely* on fingerprint evidence. Second, even if it had been, the prints were found under such circumstances to establish beyond a reasonable doubt that the fingerprints were impressed when these crimes were committed.

Defendant also summarily argues the evidence did not prove beyond a reasonable doubt that the print on the palm card produced as evidence belonged to him. Defendant testified at trial he signed a palm print card when his print was taken at the police station, then notes the card presented at trial did not bear his signature. However, a police officer testified the palm print on the card was made by defendant, and that he did not sign the card. Thus, there was sufficient evidence to prove the print belonged to defendant.

■ Finally, defendant raises a question regarding the seminal ma-

terial found in several places. It was found on a vaginal swab taken from the victim after the rape, on her bedsheets, a blanket, a nightshirt, and other clothing worn by the victim. An expert testified that based on medical tests, the seminal material in all these locations could not have come from defendant, but could have come from the victim's boyfriend. Defendant points to expert testimony that seminal material was found on clothing worn by the victim after the rape. This clothing was given to her by a neighbor, who said it was clean at the time it was given to the victim. Defendant then points out that no seminal material was found on the victim's panties or a pantyliner which were worn for 12 hours prior to the rape. Defendant implies that if the material found on the clothes worn after the rape came from the victim's boyfriend, there should have been traces of the material on the victim's undergarments worn for the hours before the rape. He argues that the person who raped the victim deposited the seminal material, and because it could not have come from defendant, he could not be found guilty. Defendant overlooks the victim's testimony that her attacker did not ejaculate. The jury chose to believe the victim's testimony on this matter. It was reasonable for the jury to believe all of the seminal material found came from the victim's boyfriend.

"A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) Having considered defendant's numerous attacks on the evidence, we find there is sufficient evidence to support the jury's verdicts.

Defendant's fourth issue raises the contention that the sentences imposed were excessive. First, he claims the court abused its discretion in sentencing him to four concurrent 25-year terms for rape, deviate sexual assault, home invasion, and armed violence, and to a 10-year term for residential burglary, to run concurrently with the 25-year sentence. He argues the record fails to disclose sufficient aggravating factors to justify these terms.

Both parties agree that "the imposition of a sentence is a matter of judicial discretion and that, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review." *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.

Defendant claims the court's reference during the sentencing hearing to deterrence of others, while not necessarily error, was suspect. He cites *People v. Thomas* (1979), 76 Ill. App. 3d 969, 976, 395 N.E.2d 601, 605, to argue deterrence of others is a suspect factor to

consider in sentencing. The decision in *Thomas* does not help defendant. There this court found deterrence of others could not be used to deny *probation* when deterrence was the *sole* aggravating factor. Deterrence was not the sole aggravating factor in the present case. Other aggravating factors were obvious in the record and known to the trial court. (See *People v. Griffin* (1981), 94 Ill. App. 3d 165, 168, 418 N.E.2d 817, 818.) The record shows the trial court considered the threat of harm to the victim during the attack. The court also considered the lasting psychological effects of the attack on the victim. These were both properly considered as aggravating factors under section 5—5—3.2 of the Unified Code of Corrections. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(a)(1); *People v. Burton* (1981), 102 Ill. App. 3d 148, 153, 429 N.E.2d 543, 547.) In addition, section 5—5—3.2(a)(7) of the Code provides that deterrence of others is a factor to be accorded weight in favor of imposing a term of imprisonment. Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(a)(7).

It is clear the court found sufficient aggravating factors to impose the terms of imprisonment. We cannot find an abuse of discretion in these sentences.

■ Defendant's next contention regarding sentencing is that a consecutive sentence for armed robbery was not justified by section 5—8—4(b) of the Unified Code of Corrections, which provides:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(b).

We first note that the statutory requirement that the court "shall set forth in the record" the basis for determining the consecutive sentences are "required to protect the public" has been waived. This is because defendant did not request a specific finding of the sentence in court relative to protection of the public, nor did he complain that a basis for the statutory finding was not sufficiently articulated. *People v. Woods* (1985), 131 Ill. App. 3d 51, 53, 475 N.E.2d 589, 591.

Nevertheless, the record shows the court was of the opinion a consecutive term was necessary for protection of the public. (*People v. Pittman* (1982), 93 Ill. 2d 169, 178, 442 N.E.2d 836, 840.) The court stated: "The invasion of the home has been defined and the legislature has considered that a person who does this is really—demonstrates that he is a bad person, a person that society has a right to

remove from its midst \*\*\*." Thus, defendant's allegation on this point is without merit.

■ Next, defendant claims the court violated section 5—8—4(a) of the Code, which, in pertinent part, states:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective \*\*\*." Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(a).

"[T]he imposition of consecutive sentences depends upon both the existence of separate and distinct acts and separate motivation behind those acts. \*\*\* Courts have applied this test to uphold consecutive sentences where the defendant committed different crimes sequentially against the same victim." *People v. Perruquet* (1983), 118 Ill. App. 3d 293, 295-96, 454 N.E.2d 1055, 1057.

In *People v. Brown* (1975), 31 Ill. App. 3d 547, 334 N.E.2d 323, the defendant had completed a rape, then went through the victim's purse and took money. The court found there was a change in the criminal objective. A similar factual situation was addressed in *People v. Walker* (1971), 2 Ill. App. 3d 1026, 279 N.E.2d 23, with the court finding separate acts and separate mental states for rape and armed robbery.

In the present case, defendant had sodomized and raped the woman in her bedroom, then went to the living room to take her money. The victim testified defendant threatened her with the gun three separate times—once for sodomy, once for rape, and once for robbery. We find there was a substantial change in the nature of defendant's criminal objective. He had changed his motivation from sexual abuse to robbery.

■ Defendant's final contention is that his conviction for armed violence must be vacated, because that crime was necessarily included in the rape offense. The State concedes this issue. Both the State and defendant cite *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477, 479, and *People v. Mormon* (1982), 92 Ill. 2d 268, 270, 442 N.E.2d 250, 251, for the rule that in the absence of a clear legislative expression of the contrary, "multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges." (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477, 479.) Therefore, we agree defendant's conviction for armed violence must be vacated, since judgment should be entered only on the more serious offense. *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477, 480.

For the foregoing reasons, the judgment and sentence of the circuit court of Jackson County for the offense of armed violence is vacated; the judgments and sentences for the offenses of rape, deviate sexual assault, home invasion, residential burglary, and armed robbery are affirmed.

Affirmed in part, vacated in part.

JONES, P.J., and KASSERMAN, J., concur.