THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND CENTANNI *et al.*, Defendants-Appellants.

Second District   Nos. 2—86—0473, 2—86—0479 cons.

Opinion filed December 31, 1987.—Rehearing denied February 4, 1988.

Marvin J. Leavitt and David M. Schneider, both of Leavitt & Schneider, of Chicago, for appellants.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People:

JUSTICE DUNN delivered the opinion of the court:

The defendants, Raymond and Paul Centanni, appeal from the

order of the circuit court which sentenced them, after a negotiated guilty plea, to 30 years' incarceration for having committed the offense of home invasion in violation of section 12—11 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—11). In this consolidated appeal the defendants contend that the court erred when it sentenced them to 30 years, the maximum incarceration for the offense charged. Specifically, they argue that the court: (1) failed to use proper standards when it sentenced them in that it noted that their conduct carried extended-term sentencing potential, and, further, the court failed to recite which aggravating factors, if any, justified imposition of the maximum term; (2) erred when it denied the defendants' motion *in limine* and allowed evidence to be elicited concerning the facts of a separate offense; and (3) denied the defendants due process in view of the six-year sentence which the court gave a codefendant. Initially, however, we must first address the jurisdictional issue raised herein by the failure of each of the defendants to file a motion to withdraw his plea of guilty and vacate judgment pursuant to Supreme Court Rule 604(d) (107 Ill. 2d R. 604(d)). Because of counsel's ineffective assistance in failing to file a required Rule 604(d) motion, defendants request that we nevertheless determine the substantive issues raised concerning the sentence.

■ From our examination of the record, it is evident that the trial court properly advised defendants in accordance to Supreme Court Rule 605(b) upon their pleas of guilty, including the requirement to file within 30 days a motion to withdraw the plea of guilty and the consequences of a failure to file the motion. It is clearly evident in the record that defendants wished to appeal from the denial of their motions for reconsideration of the sentence, and a notice of appeal was filed on behalf of each of the defendants on the same day of the denial of their motions for reconsideration of the sentence. Under these circumstances, where the desire of a defendant to appeal is evident on the record, this court has held that the failure of counsel to file the required Rule 604(d) motion constitutes ineffective assistance of counsel and, thus, jurisdiction of the appeal would not be denied. (*People v. Leidtke* (1987), 154 Ill. App. 3d 604, 605-07, 506 N.E.2d 984.) We so hold here.

On October 7, 1985, the defendants, Raymond and Paul Centanni, were charged in Lake County with commission of home invasion, residential burglary, theft, and unlawful restraint. On March 19, 1986, the defendants pleaded guilty to home invasion pursuant to a plea agreement, and the State dismissed the remaining three counts. In addition, the defendants offered to testify before the Lake County

grand jury about another individual's participation in the home invasion. Both the State and the defendants agreed that each side would present evidence in aggravation and mitigation at the sentencing hearing. They also agreed that the State would not request an extended sentence.

Prior to sentencing, the defendants filed a motion *in limine* which sought to preclude the State from offering evidence in aggravation which related to their participation in an alleged home invasion in Northbrook. In support of their motion, the defendants called Northbrook detective John Flynn, who testified that he assisted Cook County State's Attorney Babbit when Babbit took a statement from Raymond Centanni with regard to the defendants' involvement in a Northbrook home invasion. Flynn testified that Raymond's statement included his acknowledgment of an agreement whereby the defendant was assured that by cooperating any sentence in the Northbrook case would run concurrently with the sentence imposed in a separate case pending against him in Chicago. The defendants argued that if the court allowed the State to use evidence of these statements in aggravation, the voluntariness of the defendant's statements would be negated and, furthermore, the defendants would be subject to enhanced penalties based on the evidence. The trial court denied the defendants' motion. Specifically, the court noted that: (1) the strict rules of evidence do not apply at sentencing hearings; (2) the State's Attorney is not precluded from presenting testimony by witnesses as to what happened during the alleged Northbrook home invasion; and (3) the court would entertain anything showing the extent of the defendants' criminality.

Thereafter, at the sentencing hearing, Deerfield police officer Ennis testified that he responded to a burglary on October 13, 1984, at the home of Mr. and Mrs. Simon. He acknowledged that he remained at the scene for four hours and that neither Mr. nor Mrs. Simon, who were present during the burglary, required hospitalization.

Joy Simon testified that after arriving at her home on October 13, 1984, three or four men accosted her, took her bracelets and necklace, and proceeded to tie her legs and arms together. She also testified that she heard these men threaten her husband with a gun and that one threatened to cut her ear off if she did not cooperate. She indicated that she heard these men rummaging through her personal belongings after she told them where she kept certain items. Before the men left, Mrs. Simon stated that one repeatedly told her that he was going to kill her. After the men left she testified that she surmised her husband had freed himself and set off the burglar

alarm. She also indicated that both she and her husband had been able to free themselves from their bonds.

Howard Simon testified that on October 13, 1984, the men entered his house, bound him, and blindfolded him. He indicated that the defendant Raymond threatened him with a gun and ordered him to divulge the location of the safe. On cross-examination, Simon indicated that both he and his wife were able to free themselves from their bonds. He also stated that a third defendant, Floyd Reed, threatened to cut off Mrs. Simon's ear.

Deerfield police investigator Thomas Sheahan testified that in addition to the defendants, Floyd Reed, Tim Pilskowski, and Thomas Barret were also implicated in the incident. He also testified that Reed had pleaded guilty and received six years' incarceration. He indicated that as a result of both the Centannis' cooperation, the police were able to arrest and charge Barret. The Centannis also described other criminal activities of which they were aware. Finally, Sheahan acknowledged that the defendants never fired any weapons in the subject transactions.

Lorraine Keyser, a victim of a home invasion which occurred at her home on September 5, 1983, testified that she was subdued by men in masks and her hands and legs bound. She testified that the men threatened her with bodily harm if she did not tell them where her money and other possessions were hidden. She indicated that she was able to free herself from the bond 10 to 15 minutes after the defendants had exited her home.

John Green testified that he had become acquainted with the defendants in August 1983. He indicated that it was his responsibility to turn off the alarm at the Keyser residence. He stated that a storm triggered the alarm at the home and that he and the defendants left the area. Green testified that he did not return. Finally he indicated that he received two years' probation in return for his cooperation in this matter.

John Flynn testified that, in February 1985, the defendant Raymond gave him a statement with regard to his involvement in the Keyser home invasion. Flynn reiterated that the defendants had been cooperating with him with regard to other individuals involved.

Five witnesses were called on behalf of the defendants. Broadview police officer Donald Roff testified that he has known the defendants for approximately 15 years and indicated that although normal teenagers, they had changed as a result of their drug usage. In his opinion, the defendants had "straightened out" since they stopped using drugs. Pastor Raymond Skriba testified that he met

the defendants in November 1985 at the Lake County jail, where he provided counseling to them. In Skriba's opinion, the defendants attempted to improve their present situation as evidenced by their work in the jail's administration. He also indicated that Paul Centanni saved the life of another inmate. He further believed that the defendants exhibited excellent rehabilitative potential. Rosemarie Centanni, the defendants' mother, testified that she knew of her sons' drug problems. In her opinion, both defendants showed remorse for their actions. Raymond Centanni, Sr., the defendants' father, testified that he had seen a positive change in defendants' attitude since their arrest and that, upon their release from prison, they could reside with him. He also indicated that Raymond was a union electrician and Paul would have a construction job upon release from prison. Leonard Williams, a Lake County jail employee, testified that the defendants regularly go to drug counseling, the law library and Sunday worship. He also recounted the incident in which Paul saved another inmate from a life-threatening asthma attack.

At the close of argument the trial court sentenced the defendants to 30 years' incarceration. In determining the sentence, the court stated that defendants had committed a "very violent, very horrible crime," had threatened bodily harm, and had threatened to kill Mr. Simon. The court noted that people who take drugs, as the defendants in this case, are responsible for their conduct. The court also commented that the defendants committed a similar crime against Mrs. Keyser in Northbrook. Finally, the judge noted that in this case the prior plea negotiations precluded the court from considering sentencing defendants to an extended term and limited the penalty to no more than 30 years. On May 23, 1986, the court refused to allow defendants' motion to reconsider sentence. They then filed this timely appeal.

Defendants have set forth three arguments on appeal. First, they contend that the trial court failed to follow proper sentencing procedures in that it neglected to recite any aggravating factors to justify the imposition of the maximum 30-year sentence. Specifically, they maintain that their actions did not constitute especially brutal, violent, or physically harmful conduct, nor was there any aggravating evidence over and above the offense itself which suggests that a minimum six-year sentence would not have been more appropriate. It is also defendants' position that the court's unsupported opinion that their conduct subjected them to extended-term sentencing, but for the prior plea agreement, was a prominent factor when it imposed the maximum 30-year sentence.

■ It is recognized that a court of review, when considering the appropriate punishment, must give great weight to the judgment of the trial court. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 108, 458 N.E.2d 1370.) The trial judge is normally in a better position to determine the punishment to be imposed, and his decision with regard to sentencing is entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) It is not the province of the reviewing court to reduce a sentence merely as an act of judicial clemency. (*People v. Barber* (1983), 116 Ill. App. 3d 767, 779, 452 N.E.2d 725.) In the absence of abuse by the trial court, a sentence may not be altered on review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Defendants initially argue in support of reduction of sentence that the trial court failed to recite the aggravating factors it employed when it determined sentence as required by section 5—4—1(c) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(c)). We disagree.

■ ■ It is well established that a trial court is not required to detail for the record the process it uses in reaching its determination of a proper sentence. (*People v. Burba* (1985), 134 Ill. App. 3d 228, 238, 479 N.E.2d 936.) While it is preferable that a trial judge discuss the statutory factors in aggravation and mitigation stated in sections 5—5—3.1 and 5—5—3.2 of the Code (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1, 1005—5—3.2), which would give a reviewing court a better insight into the sentencing determination, the requirement that a court set forth its reasons in the record for a particular sentence imposed does not obligate the judge to recite, and assign a value to, each fact presented in evidence at the sentencing hearing. *People v. Meeks* (1980), 81 Ill. 2d 524, 533-34, 411 N.E.2d 9.

■ In our opinion, the aggravating factors which justify the sentence are readily apparent from the record, and the trial judge did articulate reasons for his imposition of the lengthy sentence. Mrs. Simon testified that she was accosted by three home invaders wearing masks and in possession of guns. One of the invaders ripped a necklace off her neck and ripped two bracelets off her wrists. She also testified she was thrown to the floor, face down, and her arms pulled behind her back which caused an arm injury. Her legs were taped and a gun was put to her head. The invaders also put a gun to Mr. Simon's head and stated, "I'm going to blow your brains out. Tell me where the safe is." During the course of the next two hours, the invaders repeatedly threatened to kill both Mr. and Mrs. Simon. They took a knife to Mrs. Simon's ear and threatened to cut it off

and likewise threatened to cut off her fingers and toes one at a time. Additionally, one of the men held a gun to her head intermittently for two hours and kept taking the safety off the gun so that a click could be heard. The men then ransacked the house, leaving it in a disastrous condition. Mr. Simon added that the men blindfolded him and then hit him in the eyes with one of the guns. The men repeatedly threatened to kill him and constantly harassed both victims for the entire two hours. In our opinion, the defendants' conduct in this case exceeded the "typical" home invasion situation.

■ The transcript of proceedings of the sentencing hearing shows the trial court considered the threat of harm to the victims during the offense and also the psychological effects on the victims. These are both properly considered as aggravating factors under section .5—5—3.2 of the Code. Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(a)(1); *People v. Simmons* (1985), 138 Ill. App. 3d 492, 501, 485 N.E.2d 1135.

■ Other statutory factors which may serve to increase a sentence are that the crime posed a threat of serious physical harm and the need to deter others from committing the same crime. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.2(a)(1), (a)(7).) These aggravating factors should be construed narrowly, with no additional consideration given those elements inherent in the offense. (*People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.) In this regard, defendants argue that even if the trial court had applied these as aggravating factors, they are already inherent and an intrinsic part of the offense of home invasion.

■ Recently our own supreme court has reiterated that a reasoned judgment as to the proper penalty to be imposed must be based on the particular circumstances of each individual case. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 268, 497 N.E.2d 1138.) This judgment includes " 'the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant.' " (113 Ill. 2d at 268-69, quoting *People v. Tolliver* (1981), 98 Ill. App. 3d 116, 117-18, 424 N.E.2d 44.) As the court in *Saldivar* stated:

"Sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed. Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are technically punishable under the same statute. Likewise, the commission of any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm

or threatened harm. The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor. While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted.*" (Emphasis in original.) *People v. Saldivar* (1986), 113 Ill. 2d 256, 269.

See also Hartmann, *Factors in Aggravation and Mitigation: A Trap for the Sentencing Judge?*, 33 De Paul L. Rev. 357, 364-67 (1984).

■ We are convinced in the present case that the trial judge incorporated all the information provided at the sentencing hearing in the sentencing decision. In addition, there was much mitigation evidence before the court, and where it is presented, it is presumed that the sentencing judge considered such evidence, absent an indication in the record, other than the sentence imposed, to the contrary. *People v. Goodman* (1983), 116 Ill. App. 3d 125, 127-28, 451 N.E.2d 607.

We also find the defendants' reliance on *People v. Killen* (1982), 106 Ill. App. 3d 65, 435 N.E.2d 789, misplaced. In our opinion, *Killen* stands for the proposition that a trial court "short-circuits" the sentencing procedure when it proceeds to a finding necessary for imposing an extended term, without first considering the factors in aggravation and mitigation. Additionally, the *Killen* court found that the trial court's findings under section 5—5—3.2(b)(2) of the Code concerning heinous and brutal behavior accompanying the offense, were in error. In the present case, however, the trial court's statement regarding the availability of an enhanced sentence cannot be cited as a basis upon which the court entered the 30-year sentence. The record fails to indicate that the trial court's belief that an extended term *could* be imposed played any part in the sentence which it *did* impose. (*People v. Miller* (1983), 115 Ill. App. 3d 592, 608, 450 N.E.2d 767, *cert. denied* (1984), 465 U.S. 1033, 79 L. Ed. 2d 701, 104 S. Ct. 1302.) Furthermore, in the present case the trial court heard and considered evidence in aggravation and mitigation *before* entering the sentence, and the sentence, thus, is authorized under the law.

Defendants' second argument on appeal concerns the court's decision to deny their motion *in limine* which sought to exclude at sentencing the facts of the separate Northbrook home invasion. Defend-

ants contend that their agreement with the Cook County State's Attorney provided that if they cooperated with the Northbrook police department about the Northbrook home invasion, they would not receive any additional time or enhancement of their sentence in any other case. In the present case, the Lake County State's Attorney told defendants that he sought to introduce evidence regarding the Northbrook incident at defendants' sentencing hearing. It is defendants' position, under the terms of the agreement, that any evidence concerning the Northbrook home invasion should not be used in aggravation to enhance their sentence in the present case.

Defendants' argument, however, is contrary to the philosophy expressed by our supreme court in *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344. In *La Pointe* the supreme court, quoting *People v. Adkins* (1968), 41 Ill. 2d 297, 300-01, 242 N.E.2d 258, observed:

> " 'In Illinois, too, we have long held that the judge in determining the character and extent of punishment is not limited to considering only information which would be admissible under the adversary circumstances of a trial. While it must exercise care to insure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials *(People v. Crews*, 38 Ill. 2d 331), "the court is not confined to the evidence showing guilt, for that issue has been settled by the plea. The rules of evidence which ordinarily obtain in a trial where guilt is denied do not bind the court in its inquiry. It may look to the facts of the [crime], and it may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense. In doing so it may inquire into the general moral character of the offender, his mentality, his habits, his social environments, his abnormal or subnormal tendencies, his age, his natural inclination or aversion to commit crime, the stimuli which motivate his conduct, and, as was said in *People v. Popescue* [345 Ill. 142], the judge should know something of the life, family, occupation and record of the person about to be sentenced." [Citations.]' " 88 Ill. 2d 482, 494-95, 231 N.E.2d 344.

Thus, pursuant to *La Pointe* a trial judge should have the benefit of any type of information with regard to the defendant, so long as that information is accurate and the judge is shielded from the prejudicial effect of the improper material.

Defendants argue additionally, however, that by denying their motion *in limine,* the trial judge caused the breach of an agreement

with the Cook County State's Attorney, who promised that defendants would not serve any additional time due to their participation in the Northbrook offense. Defendants assert that the State's Attorney of Lake County was bound by the Cook County agreement. This issue has recently been addressed by a case in the Appellate Court for the Fourth District, *People v. Staten* (1987), 158 Ill. App. 3d 971, 511 N.E.2d 938.

In *Staten*, defendant argued that his case fell within a certain defined category of cases, namely, actions to bar subsequent prosecution based on a prior judgment entered on a court-approved plea agreement. On appeal, defendant in *Staten*, as defendant in the present case, relied on the appellate court's decision in *People v. Wantland* (1979), 78 Ill. App. 3d 741, 397 N.E.2d 548. In *Wantland*, defendant argued that the trial court of McLean County had erred when it revoked his probation for violation of conditions of probation and the appellate court agreed.

Defendant in *Wantland*, pursuant to the agreement, had pleaded guilty to burglary in Vermilion County and had been sentenced to a term of probation with periodic imprisonment as a condition of probation. Part of the plea agreement in Vermilion County was that the burglary conviction would not be used to revoke the defendant's probation in McLean County. Nevertheless, after the defendant pleaded guilty and the court accepted his plea and sentenced him in Vermilion County, a petition to revoke the defendant's probation was filed in McLean County, and it was from judgment on this revocation that appeal was taken.

The *Wantland* court stated:

"The plea agreement here is one between defendant and the State where the Vermilion County State's Attorney functioned as an agent of the State, rather than an agreement between defendant and the State's Attorney as an individual. The State, as principal, is bound by the terms of this *judicially approved and partially executed* agreement even though one of the terms involved an agent other than the one who executed the agreement.

Correspondingly, we conclude that although the Vermilion County State's Attorney should have notified the McLean County State's Attorney of the proposed agreement, he had the power to strike the agreement on behalf of the State even though the agreement involved a charge that had been brought in another county. In addition, the circuit court of McLean County should have recognized and enforced the plea

agreement since it *had been approved by the circuit court of Vermilion County*. These propositions have been recognized implicitly by the supreme court in *People ex rel. Cruz v. Fitzgerald* (1977), 66 Ill. 2d 546, 363 N.E.2d 835." (Emphasis added.) *Wantland,* 78 Ill. App. 3d at 744-45, 397 N.E.2d at 551-52.

In *Staten* the appellate court distinguished *Wantland* based on the involvement of the circuit court of Vermilion County in approving the plea agreement and entering judgment on it. Indeed, insofar as *Wantland* suggested that the State's Attorney for one county functions as an agent of the State and can dismiss or agree to nol-pros charges outside his jurisdiction and without court approval, the court expressly overruled it. As the court stated, such unilateral, unlimited authority in a county State's Attorney without court involvement cannot be condoned. As *Staten* makes clear, and we agree, a State's Attorney simply cannot make a contract with a defendant which would be binding upon a sentencing judge. *People v. Staten* (1987), 158 Ill. App. 3d 971, 977-81, 511 N.E.2d 938.

In our opinion, the present case is more comparable to *People v. Click* (1974), 22 Ill. App. 3d 89, 316 N.E.2d 808, which held that prior judgment on entry of a court-approved plea agreement did not bar a later prosecution. In *Click,* defendant appealed from orders entered by the circuit court of Kane County revoking his probation and sentencing him to imprisonment. Defendant maintained the judgment was erroneous because it constituted a breach of a plea agreement between defendant and the State's Attorney of Kane County. The record disclosed that in 1973 the Ogle County public defender, representing defendant, wrote to the State's Attorney of Kane County seeking to clear up all matters involving defendant pursuant to section 5—4—2(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—4—2(b)) and suggested that defendant be placed on four years' probation in Ogle County, the first three years to be served in the Ogle County Public Safety Building. The Kane County State's Attorney responded, and pursuant to section 5—4—2(b), the circuit court of Ogle County thereafter accepted defendant's guilty plea to the five Kane County charges, and to charges in Ogle and St. Clair Counties, and entered judgment thereon. The judgment order of the Ogle County court listed the five Kane County cases being disposed of by number. The two cases referred to in the *Click* appeal were not among those listed and were evidently overlooked by the State's Attorney of Kane County. (*People v. Staten* (1987), 158 Ill. App. 3d 971, 979, 511 N.E.2d 938.) The *Click* court rejected the

argument that the plea bargain was between defendant and the State's Attorney of Kane County:

> "The question of whether the defendant would be entitled to any relief in Ogle County based on an alleged breach of an unfulfilled promise made by the State's Attorney of Ogle County is not before us. Defendant's reliance in the instant case on *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495; *People v. White* (1972), 5 Ill. App. 3d 205, and *People v. Pier* (1972), 51 Ill. 2d 96, is therefore misplaced. Each of those cases concerned a plea bargaining agreement between the prosecutor and the accused and would be relevant only in relating to any plea bargain the defendant entered into with the State's Attorney of Ogle County. There was no plea bargain here between the defendant and the State's Attorney of Kane County." *People v. Click* (1974), 22 Ill. App. 3d 89, 93, 316 N.E.2d 808.

The defendants' third argument is that their 30-year sentences are disparate when compared to the six-year sentence received by their codefendant, Floyd Reed. Although an arbitrary and unreasonable disparity between the sentences of codefendants who are similarly situated is impermissible, the mere fact that one defendant receives a substantially longer sentence does not, by itself, establish a violation of fundamental fairness. (*People v. Kline* (1982), 92 Ill. 2d 490, 508, 442 N.E.2d 154; *People v. Godinez* (1982), 91 Ill. 2d 47, 55-56, 434 N.E.2d 1121.) A disparity in sentences between codefendants will not be disturbed where it is warranted by differences in the nature and extent of the concerned defendant's participation in the offense (*People v. Godinez* (1982), 91 Ill. 2d 47, 55-56, 434 N.E.2d 1121), by differences in the criminal records of the participants (*People v. Kline* (1982), 92 Ill. 2d 490, 508, 442 N.E.2d 154), by defendant's greater relative maturity (*People v. DeWaele* (1981), 98 Ill. App. 3d 636, 637, 424 N.E.2d 876), or by a defendant's greater rehabilitative potential (see *People v. Godinez* (1982), 91 Ill. 2d 47, 54, 434 N.E.2d 1121). It has also been recognized by the United States Supreme Court that the trial court may properly take into consideration, when fixing a sentence, defendant's willingness or refusal to cooperate with law enforcement officials investigating criminal activity in which he was a participant. *People v. Bergman* (1984), 121 Ill. App. 3d 100, 106, 458 N.E.2d 1370; see *Roberts v. United States* (1980), 445 U.S. 552, 63 L. Ed. 2d 622, 100 S. Ct. 1358.

In our opinion, however, defendants' argument is hampered by their failure to present the codefendant's report of proceedings or

presentence report to this court, thereby offering us no possibility to review Reed's sentence or compare it with other defendants' sentences in this case. Indeed, unlike defendants, we have no way of knowing whether Reed has any past convictions. Furthermore, we do not know if Reed's sentence was imposed as part of a negotiated guilty plea. Where a codefendant's sentence is attributable to his having agreed to enter a plea of guilty, such a sentence does not provide a valid basis of comparison. *People v. Abrego* (1986), 142 Ill. App. 3d 973, 985, 492 N.E.2d 636.

It is well established that a disparate sentence may be supported by either a more serious criminal record or greater participation in the offense. (*People v. Kline* (1982), 92 Ill. 2d 490, 508, 442 N.E.2d 154; *People v. Bergman* (1984), 121 Ill. App. 3d 100, 105, 458 N.E.2d 1370). Furthermore, a disparity in sentences may be warranted if the codefendant has a greater rehabilitation potential. (See *People v. Godinez* (1982), 91 Ill. 2d 47, 54, 434 N.E.2d 1121.) Here, since we have not reviewed Reed's record, we would be forced to speculate as to whether Reed had a lesser record or a greater rehabilitation potential, thus justifying the disparate sentence under *Bergman, Kline* and *Godinez.*

■■■ Where the record of an appeal is incomplete, as in the present case, the reviewing court will indulge in every reasonable presumption favorable to the judgment appealed from, including that the trial court acted correctly. Any doubt arising from the incompleteness of the record will be resolved against the appellant. (*People v. Anderson* (1977), 51 Ill. App. 3d 621, 623, 366 N.E.2d 900.) Thus, defendants' final argument must also fail.

Accordingly, for the reasons set forth above, the judgment of the circuit court is affirmed.

Affirmed.

WOODWARD and UNVERZAGT, JJ., concur.