**UNITED STATES of America ex rel. Raymond CENTANNI, Petitioner,**

**v.**

**Odie WASHINGTON, et al., Respondents.**

**UNITED STATES of America ex rel. Paul CENTANNI, Petitioner,**

**v.**

**Odie WASHINGTON, et al., Respondents.**

**Nos. 95 C 7393, 95 C 7394.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 17, 1997.

---

Richard P. Caro, Riverside, IL; Corine A. Shuflit, Chicago, IL, for Petitioners.

Steven J. Zick, Assistant Attorney General, State of Illinois, Chicago, IL, for Respondents.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Each of Raymond and Paul Centanni (individually "Raymond" and "Paul," and collectively "Petitioners") has filed a 28 U.S.C. § 2254 ("Section 2254") petition, later supplanted by an amended petition (for convenience each amended petition will be referred to as "Petition"), seeking the issuance of a writ of habeas corpus.[1] Both Petitioners challenge the April 28, 1986 Judgment of Conviction and Sentence entered by the Circuit Court of Lake County, which imposed a 30–year term of imprisonment on each of them after he had pleaded guilty to one count

---

**1.** Upon motion by Petitioners and agreement by the Illinois Attorney General, this Court ordered consolidation of the Petitions.

of home invasion. For the reasons stated in this memorandum opinion and order, both Petitions are denied and these actions are dismissed.

## Facts

In any federal habeas proceeding, Section 2254(e)(1)[2] makes the state court's findings of fact presumptively correct. In this instance the factual background as stated in the Illinois Appellate Court's opinion on direct review of Petitioners' sentences (*People v. Centanni*, 164 Ill.App.3d 480, 483–86, 115 Ill.Dec. 521, 523–25, 517 N.E.2d 1207, 1209–11 (2d Dist.1987)) fairly reflects the record. This opinion therefore adopts and repeats that version verbatim:

> On October 7, 1985, the defendants, Raymond and Paul Centanni, were charged in Lake County with commission of home invasion, residential burglary, theft, and unlawful restraint. On March 19, 1986, the defendants pleaded guilty to home invasion pursuant to a plea agreement, and the State dismissed the remaining three counts. In addition, the defendants offered to testify before the Lake County grand jury about another individual's participation in the home invasion. Both the State and the defendants agreed that each side would present evidence in aggravation and mitigation at the sentencing hearing. They also agreed that the State would not request an extended sentence.

> Prior to sentencing, the defendants filed a motion *in limine* which sought to preclude the State from offering evidence in aggravation which related to their participation in an alleged home invasion in Northbrook. In support of their motion, the defendants called Northbrook detective John Flynn, who testified that he assisted Cook County State's Attorney Babbit when Babbit took a statement from Raymond Centanni with regard to the defendants' involvement in a Northbrook home invasion.[3] Flynn testified that Raymond's statement included his acknowledgement of an agreement whereby the defendant was assured that by cooperating any sentence in the Northbrook case would run concurrently with the sentence imposed in a separate case pending against him in Chicago. The defendants argued that if the court allowed the State to use evidence of these statements in aggravation, the voluntariness of the defendant's [sic] statements would be negated and, furthermore, the defendants would be subject to enhanced penalties based on the evidence. The trial court denied the defendants' motion. Specifically, the court noted that: (1) the strict rules of evidence do not apply at sentencing hearings; (2) the State's Attorney is not precluded from presenting testimony by witnesses as to what happened during the alleged Northbrook home invasion; and (3) the court would entertain anything showing the extent of the defendants' criminality.

> Thereafter, at the sentencing hearing, Deerfield police officer Ennis testified that he responded to a burglary on October 13, 1984, at the home of Mr. and Mrs. Simon. He acknowledged that he remained at the scene for four hours and that neither Mr. nor Mrs. Simon, who were present during the burglary, required hospitalization.

> Joy Simon testified that after arriving at her home on October 13, 1984, three or four men accosted her, took her bracelets and necklace, and proceeded to tie her legs

---

**2.** Section 104(2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("Act"), Pub.L. 104–132, 110 Stat. 1214, redesignates former Section 2254(d) as Section 2254(e) (*Lindh v. Murphy*, 96 F.3d 856, 861 (7th Cir.1996), *cert. granted in part*, —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997)). Although this opinion has of course followed the teaching in *Lindh* (as this Court is bound to do), the result here would be no different if the Supreme Court were to answer the question as to the Act's retroactivity in a way that brought pre-Act principles into play instead. More on this subject later.

**3.** [Footnote by this Court] In their Petitions and other supporting documents, Petitioners seek to introduce additional facts regarding their access to counsel in connection with interrogations by the Deerfield and Glenview Police and alleged misrepresentations made by those officers. Both (1) because those claimed facts were not developed before any Illinois state court and (2) because Petitioners are found here to have procedurally defaulted on each constitutional claim arising out of those claimed facts, this opinion does not detail those additional factual allegations.

and arms together. She also testified that she heard these men threaten her husband with a gun and that one threatened to cut her ear off if she did not cooperate. She indicated that she heard these men rummaging through her personal belongings after she told them where she kept certain items. Before the men left, Mrs. Simon stated that one repeatedly told her that he was going to kill her. After the men left she testified that she surmised her husband had freed himself and set off the burglar alarm. She also indicated that both she and her husband had been able to free themselves from their bonds.

Howard Simon testified that on October 13, 1984, the men entered his house, bound him, and blindfolded him. He indicated that the defendant Raymond threatened him with a gun and ordered him to divulge the location of the safe. On cross-examination, Simon indicated that both he and his wife were able to free themselves from their bonds. He also stated that a third defendant, Floyd Reed, threatened to cut off Mrs. Simon's ear.

Deerfield police investigator Thomas Sheahan testified that in addition to the defendants, Floyd Reed, Tim Pilskowski, and Thomas Barret were also implicated in the incident. He also testified that Reed had pleaded guilty and received six years' incarceration. He indicated that as a result of both the Centannis' cooperation, the police were able to arrest and charge Barret. The Centannis also described other criminal activities of which they were aware. Finally, Sheahan acknowledged that the defendants never fired any weapons in the subject transaction.

Lorraine Keyser, a victim of a home invasion which occurred at her home on September 5, 1983, testified that she was subdued by men in masks and her hands and legs bound. She testified that the men threatened her with bodily harm if she did not tell them where her money and other possessions were hidden. She indicated that she was able to free herself from the bond 10 to 15 minutes after the defendants had exited her home.

John Green testified that he had become acquainted with the defendants in August 1983. He indicated that it was his responsibility to turn off the alarm at the Keyser residence. He stated that a storm triggered the alarm at the home and that he and the defendants left the area. Green testified that he did not return. Finally he indicated that he received two years' probation in return for his cooperation in this matter.

John Flynn testified that, in February 1985, the defendant Raymond gave him a statement with regard to his involvement in the Keyser home invasion. Flynn reiterated that the defendants had been cooperating with him with regard to other individuals involved.

Five witnesses were called on behalf of the defendants. Broadview police officer Donald Roff testified that he had known the defendants for approximately 15 years and indicated that although normal teenagers, they had changed as a result of their drug usage. In his opinion, the defendants had "straightened out" since they stopped using drugs. Pastor Raymond Skriba testified that he met the defendants in November 1985 at the Lake County jail, where he provided counseling to them. In Skriba's opinion, the defendants attempted to improve their present situation as evidenced by their work in the jail's administration. He also indicated that Paul Centanni saved the life of another inmate. He further believed that the defendants exhibited excellent rehabilitative potential. Rosemarie Centanni, the defendants' mother, testified that she knew of her sons' drug problems. In her opinion, both defendants showed remorse for their actions. Raymond Centanni, Sr., the defendants' father, testified that he had seen a positive change in defendants' attitude since their arrest and that, upon their release from prison, they could reside with him. He also indicated that Raymond was a union electrician and Paul would have a construction job upon release from prison. Leonard Williams, a Lake County jail employee, testified that the defendants regularly go to drug counseling, the law library and Sunday worship. He also recounted the incident in which

Paul saved another inmate from a life-threatening asthma attack.

At the close of argument the trial court sentenced the defendants to 30 years' incarceration. In determining the sentence, the court stated that defendants had committed a "very violent, very horrible crime," had threatened bodily harm, and had threatened to kill Mr. Simon. The court noted that people who take drugs, as the defendants in this case, are responsible for their conduct. The court also commented that the defendants committed a similar crime against Mrs. Keyser in Northbrook. Finally, the judge noted that in this case the prior plea negotiations precluded the court from considering sentencing defendants to an extended term and limited the penalty to no more than 30 years. On May 23, 1986, the court refused to allow defendants' motion to reconsider sentence.

### Procedural History

In a consolidated appeal to the Illinois Appellate Court, each Petitioner challenged the 30-year sentence imposed on him by the Circuit Court. As stated in the Appellate Court's opinion (164 Ill.App.3d at 483, 115 Ill.Dec. at 523, 517 N.E.2d at 1209), Petitioners argued that the Circuit Court:

(1) failed to use proper standards when it sentenced them in that it noted that their conduct carried extended-term sentencing potential, and, further, the court failed to recite which aggravating factors, if any, justified imposition of the maximum term; (2) erred when it denied the defendants' motion *in limine* and allowed evidence to be elicited concerning the facts of a separate offense; and (3) denied the defendants due process in view of the six-year sentence which the court gave a codefendant.

That appeal was unsuccessful, and each Petitioner's sentence was affirmed (*id.* at 494, 115 Ill.Dec. at 530, 517 N.E.2d at 1216). Neither Paul nor Raymond filed a timely appeal on direct review to the Illinois Supreme Court.

Next Petitioners jointly petitioned pro se for collateral post-conviction relief in the Lake County Circuit Court pursuant to the Illinois Post–Conviction Hearing Act (725 ILCS 5/122–1 to 5/122–8). Separate counsel were appointed for Paul and Raymond, and each then filed a separate supplemental petition. On March 4, 1992 the State's motion to dismiss each petition was granted without an evidentiary hearing or a trial.

Petitioners then brought separate appeals from the Circuit Court's dismissal of their post-conviction petitions to the Illinois Appellate Court. As stated in that Court's unpublished written opinion (*People v. Centanni*, 248 Ill.App.3d 1104, 214 Ill.Dec. 97, 660 N.E.2d 288 (2d Dist.1993)), Paul raised several issues as to the effectiveness of both his trial and appellate counsel:

[Paul] asserts that the trial court erroneously dismissed where the record adequately establishes that in light of the brothers' varying degrees of respective culpability and their attorney's failure to advise them of their conflict of interest, he did not receive effective assistance of counsel. He also asserts that the record shows that he did not otherwise receive effective assistance of counsel, basing that latter claim upon the following grounds: (1) that he was never advised that he had a right and a reason to be represented separately from his brother; (2) that his plea was induced upon an understanding that other crimes would not be used against the brothers; and (3) that counsel failed to move to vacate the plea and sentence; (4) that counsel failed to perfect the record on appeal through a motion to supplement the record on the issue of disparity; and (5) that counsel failed to advise the defendant of the option of supreme court review.

As for Raymond, the Appellate Court described the issues presented by his appeal in these terms:

On his appeal, Raymond argues that the court erroneously dismissed his amended petition on the following grounds: (1) counsel failed to file a motion to withdraw the guilty plea, where the plea resulted from improper legal advice and where he was represented at the plea by an unprepared attorney appointed only minutes before; and (2) counsel on the direct appeal

incompetently failed to timely supplement the record to enable this court's full review of the matter of sentence disparity with co-defendant Floyd Reed.

In its unpublished opinion that consolidated Petitioners' separate appeals for disposition, the Appellate Court rejected each of Petitioners' arguments and affirmed the dismissal by the Circuit Court.

Next Petitioners (still acting separately) sought leave to appeal the dismissal of their post-conviction petitions to the Illinois Supreme Court. Paul's petition was untimely, and his belated motion for leave to file instanter was denied. Raymond's timely petition made these arguments:[4]

I. The failure of the petitioner's attorney to file a motion to withdraw his guilty plea constituted a denial of effective assistance, cognizable in a post-conviction proceeding under *People v. Wilk,* where the plea resulted from improper legal advice and where he was represented at his plea by an attorney appointed only minutes before the entry of the plea.

II. Where, the failure of counsel in the petitioner's previous appeal to properly supplement the record on appeal with a codefendant's presentence report, judgement order or reports of proceedings from the latter's plea and sentencing hearings prevented the Appellate Court from reaching the merits of the petitioner's disparate sentencing argument in that appeal, counsel plainly failed to provide the petitioner effective assistance, meriting review under the Post–Conviction Hearing Act.

Leave to appeal was denied to Raymond by the Illinois Supreme Court (*People v. Centanni,* 154 Ill.2d 563, 197 Ill.Dec. 490, 631 N.E.2d 712 (1994)).

On December 18, 1995 Petitioners filed these actions seeking federal habeas relief from their sentences, and they superseded their original filings with the Petitions on February 1, 1996. Each now advances six identical constitutional bases under which he claims to be held unlawfully:

I. Petitioner's confession and guilty plea were not based upon a knowing and voluntary waiver of constitutional rights but were induced by promises and representations or otherwise based upon material mistakes of fact.

II. Petitioner's guilty plea should be set aside and his confession suppressed because his incriminating admissions were obtained in violation of his Sixth Amendment right to assistance of counsel.

III. The thirty year sentence violated petitioner's right to due process because the term imposed was based on crimes for which petitioner had not yet been convicted of and because his confessions and cooperation were used against him and not in mitigation.

IV. The thirty year sentence violated petitioner's right to equal protection because the term imposed was grossly disproportionate and disparate to that of Reed's.

V. Petitioner was denied effective assistance of counsel by defense counsel's failure to move to vacate petitioner's guilty plea, failure to perfect for the appeal the disparity of sentence issue[.] Failure to appeal or advise petitioner to appeal to the Illinois Supreme Court constituted a denial of effective assistance.

VI. The use of petitioner's admissions of other home invasion offenses and the resulting evidence at his sentencing violated petitioner's Fifth and Fourteenth Amendment rights.

*Procedural Default*

■ Before a federal court may address the merits of a Section 2254 petition, the petitioner must have both exhausted his state

---

**4.** Although the arguments described here and in the next paragraph of the text set out their claims entirely in capital letters, this opinion has revised each of them to the ordinary form of presentation to which the eye is more accustomed.

remedies and avoided any procedural defaults under state law (*Bocian v. Godinez,* 101 F.3d 465, 468 (7th Cir.1996)). Claims are exhausted "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing review of one's conviction in state court" (*Wallace v. Duckworth,* 778 F.2d 1215, 1219 (7th Cir.1985) (per curiam)). As the Attorney General admits, Petitioners certainly satisfy the second of those tests, for "no currently available state remedy remains upon which they might obtain relief" (Answer ¶ 8). This opinion turns, then, to the separate doctrine of procedural default.

■ While "failure to exhaust ... refers only to issues that have not been presented to the state court but still may be presented" (*Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992)), procedural default occurs either (1) when a state court has declined to address a prisoner's federal claims because the prisoner failed to meet an independent and adequate state procedural requirement (*Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991)) or (2) when a claim could have been but was not brought before a state court and can no longer be asserted in that forum (*Resnover,* 965 F.2d at 1458). That second scenario might occur in one of two ways:

1. Petitioner may have failed to pursue all of the appeals required under state law in a timely manner (*Coleman,* 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1; *Jenkins v. Gramley,* 8 F.3d 505, 507 (7th Cir.1993)).

2. Petitioner may have diligently pursued all of the appeals required by state law, yet failed to raise at the state level the federal claims later asserted in the federal habeas petition (*Resnover,* 965 F.2d at 1458–59).

Here the Attorney General urges three separate instances of procedural default by one or both Petitioners. First, Petitioners are said to have defaulted on *all* their habeas claims because neither Paul nor Raymond petitioned the Illinois Supreme Court for leave to appeal on direct review of his sentence. Second, Paul has assertedly defaulted on *all* his habeas claims because he failed to file a timely petition for leave to appeal to the Illinois Supreme Court on post-conviction review. Third, Raymond is claimed to have defaulted on each habeas claim that was not included in his timely post-conviction petition to the Illinois Supreme Court. This opinion addresses each of those claimed instances of default in turn.[5]

### Default on Direct Review?

For over a decade a Section 2254 petitioner in this Circuit has been deemed to have forfeited all claims not presented on direct review to the state's highest court (see *Nutall v. Greer,* 764 F.2d 462, 464 (7th Cir.1985) and its progeny). But more recently *Hogan v. McBride,* 74 F.3d 144, 147 (7th Cir.1996), *terms of remand modified on denial of reh'g,* 79 F.3d 578 (7th Cir.1996)[6] has backed away from that bright-line approach, emphasizing instead that forfeiture under Section 2254 turns on the particular requirements of each state's internal law:

> But *Nutall* was decided before the Supreme Court refined the forfeiture doctrine in *Harris [v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ], *Coleman,* and *Ylst [v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ]. These opinions establish that § 2254 asks whether an independent and adequate state ground supports the decision. Forfeiture depends on state law, and it is accordingly essential to know whether the state courts either have held that a procedural misstep is a forfeiture, or would so hold if a collateral attack were filed in state court. If the prisoner has presented

---

**5.** Although this opinion, like much of the case law, has most often spoken and will continue to speak in terms of "procedural default," it is important to keep in mind that the relevant consequence of such a default may be to disable a petitioner from advancing the defaulted claim as a predicate for habeas relief. That disability is most appropriately characterized as the forfeiture of the claim in question—and so the case law (and hence this opinion) frequently speaks in that fashion as well.

**6.** That modification did not alter the original opinion's language quoted next in the text (or the principle stated there).

his argument to the right courts at the right times—as the states define these courts and times—then the claim is preserved for federal collateral review.

As *Hogan*, 74 F.3d at 147 made clear, it can no longer be taken for granted that Illinois law demands (on pain of procedural forfeiture) that every then-available potential habeas claim be presented on direct review to the Illinois Supreme Court. Indeed, two of this Court's colleagues have presented conflicting opinions on that very issue (contrast *Pisciotti v. Washington*, No. 91 C 3680, 1996 WL 543307, at *10 n. 3 (N.D.Ill. Sept. 20, 1996) with *United States ex rel. Jefferson v. Page*, 925 F.Supp. 591, 592–93 (N.D.Ill. 1996)).

▮▮▮ In any case, even if Petitioners' failure to appeal to the Illinois Supreme Court on direct review would ordinarily constitute procedural default (something that need not be decided here), the Attorney General's suggestion of default *in this case* must be rejected. Petitioners point out correctly that the Illinois courts never relied on Petitioners' failure to appeal their claims on direct review to the Illinois Supreme Court. Where a state court fails to assert a state procedural barrier as an "independent and adequate state ground" preventing further review—choosing instead to address the federal questions presented—the state procedure no longer precludes federal habeas review (*Jenkins*, 8 F.3d at 507 (citations omitted)):

> A default supplies an independent and adequate state ground for the judgment, so that questions of federal law no longer affect the outcome. This implies that when the final state court to consider a case acts on the merits of the federal question, without simultaneously asserting an independent state ground of decision, the federal issue remains (potentially) dispositive and is open to review under § 2254.

Here the last Illinois court to address Petitioners' appeals of their sentences—the Appellate Court on post-conviction review, 248 Ill.App.3d 1104, 214 Ill.Dec. 97, 660 N.E.2d 288—fully considered the merits of each of Paul's and Raymond's federal claims. In doing so the Appellate Court asserted no independent state ground of decision. Hence the Attorney General's first contention of procedural default will not preclude federal habeas review of Petitioners' claims.

### *Paul's Post–Conviction Default?*

▮▮▮ Under Illinois law, failure to appeal the dismissal of a post-conviction petition is generally treated as a procedural default barring further review (*Cawley v. DeTella*, 71 F.3d 691, 694 (7th Cir.1995)). As stated in the seminal Illinois decision on the subject, *People v. Core*, 48 Ill.2d 544, 545, 272 N.E.2d 12, 13–14 (1971):

> It is clear that a defendant's failure to appeal the dismissal of a post-conviction petition, coupled with the doctrines of *res judicata* and waiver, ordinarily bars further consideration of all claims which could have been raised.

In that light *Cawley*, 71 F.3d at 694, 695 (footnote omitted, and adapted to this case) has squarely held that federal habeas review is unavailable where an Illinois prisoner has not timely appealed the denial of his post-conviction petition to the Illinois Supreme Court:[7]

> Consequently, failure to appeal the dismissal of a post-conviction petition in Illinois state court will ordinarily be treated as an independent and adequate state ground (as if a state court had actually found the claims procedurally barred), preempting further habeas review in federal court.
>
> \*    \*    \*    \*    \*    \*
>
> [Paul] was required to file a timely motion for leave to appeal to the Illinois Supreme Court. This he did not do. Hence we cannot now hear his claims in federal

---

7. Although *Pisciotti*, 1996 WL 543307, at *10 n. 3 calls into question the continued validity of *Cawley* in light of *Hogan*, the later decision did not itself cast doubt on the *Cawley* pronouncement. This Court considers itself bound by the unreversed *Cawley* determination that as a matter of Illinois law a defendant must appeal (on pain of forfeiture) all post-conviction claims to the Illinois Supreme Court.

court, unless he can establish cause and prejudice for his procedural default or demonstrate that failure to consider his claim will result in a "fundamental miscarriage of justice."

■ In light of those decisions, Paul has plainly defaulted on (and hence has forfeited) all claims brought to this Court for habeas review. His post-conviction petition for leave to appeal to the Illinois Supreme Court was not timely filed, and his motion for leave to file that petition instanter was denied. As a direct result of that procedural failure, the Illinois Supreme Court refused to consider the merits of Paul's petition. Concerns for comity dictate that this Court not entertain a constitutional claim that the habeas petitioner failed to present properly to the state court for its own review (*Cawley,* 71 F.3d at 694) (citations omitted):

> In other words, if the state in which the habeas petitioner was convicted would treat failure to appeal as a procedural default barring further review, that default likewise bars federal review of the claim. Thus the federal courts insist that the habeas petitioner respect the structure of the state court system, by complying with its rules and appellate scheme, before they will provide independent, collateral review of the petitioner's claims.

■ As *Cawley* says, claims barred on procedural default grounds are not cognizable in a federal habeas proceeding unless the petitioner can clear one of the two hurdles set out in *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565:

We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.[8]

Paul has not overcome either hurdle.

■ Initially, none of his submissions even hints of any legally cognizable "cause" for his untimely appeal to the Illinois Supreme Court on post-conviction review. Though Paul suggests that his failure "was contrary to his interests at the time and a result of failure of counsel" (R. Mem.15),[9] he cannot rely on the ineffective assistance of post-conviction counsel as "cause" for his procedural default. *Steward v. Gilmore,* 80 F.3d 1205, 1212 (7th Cir.1996) has put the matter succinctly:

> Ineffective assistance of postconviction counsel is not itself a cognizable federal constitutional violation and may not serve as cause for a procedural default.

■ Also unavailing is Paul's R. Mem. 16 suggestion that the untimeliness of his petition for leave to appeal to the Illinois Supreme Court was "harmless" because that Court "had an opportunity to review and consider" the identical issues raised in Raymond's timely petition. *Engle v. Isaac,* 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982) (footnote omitted) teaches that a habeas petitioner has no "cause" to

---

8. [Footnote by this Court] Though the quoted language does not say so specifically, the *Coleman* rule of limited exceptions to procedural default logically applies not only to state decisions resting on independent and adequate state procedural rules, but also to instances where a claim was never brought before a state court in the first instance (*Jenkins,* 8 F.3d at 507–08):

> [A] defendant who neglects to present his claims to the state court at all, and thereby denies it the opportunity to assert a forfeiture rule, has surrendered them just as surely as if he presents them in a procedurally defective manner.

See also the earlier statement in *Coleman,* 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.

9. According to Paul, his parents paid attorney Joseph DiNatale ("DiNatale") $1500 to prepare and file the petition for leave to appeal to the Illinois Supreme Court. Though the petition was due on December 2, 1993, it was not until December 16 that DiNatale filed a "Motion For Leave to File Petition for Leave to Appeal Instanter," citing recent work in several trials as an excuse for his tardiness (R. Mem. 15 nn. 12 & 13). Until they received the Attorney General's answer in these actions, neither Petitioners nor their family had been informed that Paul's petition had been rejected for lack of timeliness. All thought that both Paul's and Raymond's petitions had each been denied by the Supreme Court on the merits (*id.* 15 n. 14).

bypass required state routes of appeal simply because he perceives the state courts to be unsympathetic to his claims:

> We note at the outset that the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial. If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.

Although Paul correctly identifies the existence of a "futility to object" exception to the *exhaustion* requirement, that rule requires that a habeas petitioner has *no available state procedure* for determining the merits of his claim—not simply that the petitioner expects the state court to rule against him (*White v. Peters*, 990 F.2d 338, 341–42 (7th Cir.1993)):

> Although futility is a recognized exception to the exhaustion of state remedies requirement, *see Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam), the pertinent question is not whether the state court would be inclined to rule in the petitioner's favor, but whether there is any available state procedure for determining the merits of petitioner's claim. Federal-state comity demands that a habeas petitioner first give the state courts an opportunity to pass on his federal claims, even if those courts would be expected to view such claims unfavorably.

Here Paul had ample opportunity to present his constitutional claims to the Illinois Supreme Court on post-conviction review. It cannot be assumed as a matter of law that Paul's timely presentation of those claims would necessarily have been a nonstarter—that approach would eviscerate the entire notion of procedural default in favor of a federal court's having to reach a decision on the substantive merits in all instances. Paul's untimeliness serves as a procedural default barring review by this Court for which no "cause" has been demonstrated.

■ As for the other possible escape hatch identified by *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565, Paul has offered nothing to show that denial of his petition would amount to "a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, ——, 115 S.Ct. 851, 864, 130 L.Ed.2d 808 (1995) confirms that the "fundamental miscarriage" exception is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent" (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)). Indeed, as *Steward*, 80 F.3d at 1212 (emphasis added) observes:

> The fundamental miscarriage of justice exception *requires* a claim that the defendant be actually innocent of the crime for which he or she is imprisoned.

Paul's submissions do not suggest that he is actually innocent of the crime for which he has been sentenced. As sensitive as this Court may be to several of Paul's claims about the voluntariness of his confession and his right to the effective assistance of counsel, he says nothing to indicate (much less does there exist a basis in the record to infer) that any constitutional violation "probably" resulted in the conviction of an innocent person. Thus his Petition does not pose one of the "extraordinary cases" in which this Court "may grant the writ even in the absence of a showing of cause for the procedural default" (*Schlup*, —— U.S. at ——, 115 S.Ct. at 864, again quoting *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649).

It must of course be recognized that the *Schlup* definition that equates "fundamental miscarriage" with "actual innocence" does not expressly speak to a situation in which a convicted defendant challenges his sentence rather than his conviction on constitutional grounds. But even if *Murray* (and hence *Schlup*) were to be read to leave room for a possible Eighth Amendment challenge to a "cruel and unusual" sentence as constituting a "fundamental miscarriage of justice," Paul must lose on that score for the same reason as is discussed later in this opinion in connection with Raymond's nondefaulted claim in that respect.

### Raymond's Partial Post–Conviction Default?

■ Unlike Paul, Raymond filed a timely petition for leave to appeal his post-conviction proceeding to the Illinois Supreme Court ("Raymond's Post–Conviction Petition"). But as the Attorney General demonstrates, Raymond failed there to include most of the habeas claims that he now asks this Court to review. Just as the failure to file *any* appeal of an unsuccessful post-conviction case with the Illinois Supreme Court is treated as a procedural default barring further habeas review (*Cawley*, 71 F.3d at 694), so a failure to appeal *particular claims* to the Supreme Court will result in procedural default *as to those claims (Jones v. Washington*, 15 F.3d 671, 675 (7th Cir.1994)). Once again concerns for comity dictate that this Court should not entertain constitutional claims not fairly presented to the state court.

■ In this instance a careful comparison of Raymond's Post–Conviction Petition with his current Section 2254 Petition reveals that Raymond has defaulted on all but one of his habeas claims. This opinion at 1361 has already quoted the "two substantially meritorious issues" that Raymond sought to raise in his Post–Conviction Petition. Both *Cawley* and *Jones* dictate that on habeas review Raymond must be limited to those claims—which relate to the effectiveness of Raymond's counsel at sentencing and of his appellate counsel.

■ Instead Raymond's current Section 2254 Petition and supporting papers detail a whole series of *different* purported constitutional abuses—including Sixth Amendment violations in the police station, due process and equal protection infirmities in his sentence, and Fifth and Fourteenth Amendment problems with his non-Mirandized admissions of other home burglaries. And even though Raymond does include challenges to the effectiveness of his counsel in both his Post–Conviction Petition and his Section 2254 Petition, the operative facts[10] that he now advances for such a challenge are almost entirely different from his earlier effort.[11]

It is ultimately apparent that Raymond has stated only one claim in his Section 2254 Petition that had also been included in his Post–Conviction Petition: his claim of ineffective assistance of appellate counsel for failure to supplement the record properly in support of his claim of an unconstitutionally disparate sentence. Raymond's shotgun approach of tendering a host of unrelated and heretofore unpresented constitutional claims in his Section 2254 Petition does him no good, for his failure to have presented those claims to the Illinois courts first makes each of them procedurally defaulted.

In an effort to save those claims from the Attorney General's charge of procedural default, Raymond R. Mem. 18 contends that an evidentiary hearing on his counsel's ineffectiveness (as alleged in his Post–Conviction Petition) "would have necessarily led" to consideration of the other constitutional issues now presented to this Court. But that underpinning (even if true, which can scarcely be accepted as established) is insufficient to save Raymond's claims, for he cannot be said to have fairly presented the constitutional arguments themselves to the Illinois Su-

---

**10.** Habeas claims not first "fairly presented" to the appropriate state courts are deemed procedurally defaulted (*Verdin v. O'Leary*, 972 F.2d 1467, 1472–73 (7th Cir.1992)). For a federal claim to have been "fairly presented" to a state court—so that the state court was both alerted to the fact that it was being asked to decide a federal constitutional issue and armed with the wherewithal to do so—"both the operative facts and the controlling legal principles of a constitutional claim must be submitted to the state court" (*Bocian*, 101 F.3d at 469).

**11.** In his Post–Conviction Petition Raymond attacked (1) sentencing counsel's lack of preparation, (2) sentencing counsel's faulty advice as to the legal effect of Raymond's plea agreement and (3) appellate counsel's technical failure to adhere to Illinois Supreme Court Rule 604(d) (requiring the formal withdrawal of a guilty plea before taking an appeal from a judgment entered upon that plea). By contrast, Raymond's present habeas Petition challenges (1) sentencing counsel's failure to move to vacate the guilty plea once it became clear that Raymond's confessions were being used to aggravate his sentence, (2) sentencing counsel's failure to move to suppress Raymond's self-incriminating admissions once the motion in limine on that score was denied and (3) appellate counsel's failure to notify Raymond about the possibility of direct appeal to the Illinois Supreme Court.

preme Court. Raymond's post-conviction counsel apparently made a conscious choice to focus his entire appeal on claims of ineffective assistance of counsel. Raymond's Post–Conviction Petition included no effort either to set out the prevailing legal principles of another constitutional claim or to identify the material facts necessary for the resolution of another such claim.

Finally, Raymond meets neither of the conditions identified in *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565 for having his defaulted claims reviewed in this Court. To begin with, he has suggested no "cause" for his default. Quite to the contrary, it appears that his post-conviction counsel consciously chose to focus his Post–Conviction Petition on ineffective assistance arguments—other possible claims were deliberately excluded. Second, Raymond has also failed even to approach any demonstration that denial of his petition with regard to the defaulted claims would amount to "a fundamental miscarriage of justice" (*Schlup*, 513 U.S. at ——, 115 S.Ct. at 864). As was the case with Paul's default, Raymond has made no showing that any constitutional violation "probably" has resulted in the conviction of an innocent person (*id.*).

### *Raymond's Only Nondefaulted Claim*

Raymond's current Petition as amended states his sole nondefaulted ineffective assistance claim:

> [A]lthough in the appeal appellate counsel raised the issue of disparity of sentences with that given Reed, appellate counsel had failed to include in the record on appeal or to timely move to supplement the record on the appeal with the materials pertaining to Reed and the sentence given him needed by the appellate court to consider the issue on the merits of the facts.

Clearly the Illinois Appellate Court addressed the merits of the corresponding claim by Raymond in his appeal of the post-conviction proceeding. Here is what the Appellate Court said in that respect:

> Any claim of ineffective assistance of counsel must satisfy both the requirement of professionally deficient conduct and resulting prejudice. (See *Strickland v. Wash-*

*ington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.)

\* \* \* \* \* \*

Raymond's remaining argument is that he was denied effective assistance of appellate counsel because counsel failed to supplement the record to support his claims of disparity between his and co-defendant Reed's sentence. We reject this argument, as we have rejected Paul's equivalent argument, given the absence of any showing of prejudice to support a constitutional violation finding. See [*People v.*] *Avitia*, 178 Ill.App.3d 968[, 128 Ill.Dec. 70, 533 N.E.2d 1158].

Under the Act's recent amendments to Section 2254 (and the application of those amendments to a pre-Act petition as decided in *Lindh*, 96 F.3d at 863–65), Raymond faces a severe test before a habeas writ may issue. Act § 104(3), Section 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

It is clear that Raymond is unable to travel either of those alternative paths.

First, Raymond has identified no Supreme Court decision to suggest that the Illinois Appellate Court's post-conviction decision was contrary to, or involved an unreasonable application of, clearly established federal law. Surely the Appellate Court was right to look to *Strickland* for the test of constitutionally ineffective assistance of counsel. And while Raymond suggests that such decisions as *Lozada v. Deeds*, 498 U.S. 430, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991) (per curiam) and *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346,

102 L.Ed.2d 300 (1988) require that prejudice be presumed, this is not the situation to which that line of cases applies. Instead the prejudice prong of the *Strickland* test is presumed only in cases of "actual or constructive denial of counsel," where "counsel was 'either totally absent, or prevented from assisting the accused' " (*Fern v. Gramley,* 99 F.3d 255, 259 (7th Cir.1996), quoting *United States v. Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657 (1984)). Indeed, *Penson,* 488 U.S. at 88, 109 S.Ct. at 354 (citation omitted) specifically distinguished cases like the one at hand "where counsel fails to press a particular argument on appeal, or fails to argue an issue as effectively as he or she might." [12]

■ Second, the Appellate Court's decision was also not unreasonable in light of the evidence presented in the state court. In that regard the prejudice prong of the *Strickland* test for ineffective assistance requires a showing that "but for" Raymond's appellate counsel's inadequate performance, "the result of the proceedings would have been different" (*United States v. Jackson,* 103 F.3d 561, 573 (7th Cir.1996)). And as *Holman v. Page,* 95 F.3d 481, 486 (7th Cir. 1996) (some citations omitted) stated recently, a state trial court's discretion in sentencing codefendants is not easily upset when one defendant (presumably more harshly sentenced) alleges a constitutional violation due to sentencing disparities:

> Judicial discretion naturally leads to discrepancies in sentencing.... But even wide sentencing discretion in the abstract is not a violation of due process or equal

protection. As we held in *[United States v.] Marshall,* [908 F.2d 1312, 1321 (7th Cir.1990) (en banc), aff'd sub nom. *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) ], the issue is the appropriateness of the sentence given the defendant's crime: "Discretion, even if it ends in grossly unequal treatment according to culpability, does not entitle a guilty defendant to avoid a sentence appropriate to his own crime." *Id.; see Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970) ("Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear. The Constitution permits qualitative differences in meting out punishment and *there is no requirement that two persons convicted of the same offense receive identical sentences.* ") (emphasis added).

Any contention that Raymond's sentence might be disproportionate to codefendant Reed's is not itself a reason for altering Raymond's punishment (*Marshall,* 908 F.2d at 1320). Rather, Raymond's 30–year sentence is constitutionally infirm only if that sentence (standing alone) constituted cruel and unusual punishment under the "exceedingly narrow proportionality element" of the Eighth Amendment (*Holman,* 95 F.3d at 485).[13]

Although *Harmelin* reflects disagreement within the Court as to the proper standard of review for an Eighth Amendment "proportionality" claim,[14] it is plain that Raymond's

---

**12.** It is obvious from the just-completed analysis that Raymond would have fared no better under pre-Act habeas doctrine (see n. 2).

**13.** Even though Claim IV of Raymond's current Petition charges that his "grossly disproportionate" 30–year sentence was a denial of his "constitutional rights to due process and equal protection," the ensuing Claim V does not specify whether Raymond's ineffective assistance charge is predicated on the prejudice he assertedly suffered from counsel's failure to perfect a claim of infirmity of due process, equal protection or some other constitutional right. If Claim V is premised solely on equal protection or due process grounds, Raymond's Petition must be summarily dismissed because *Holman,* 95 F.3d at 485–86 teaches that the Eighth Amendment's ex-

plicit application to the constitutionality of punishment forecloses any challenge to the proportionality of a sentence under the Due Process or Equal Protection Clauses. However, because Raymond's Petition and supporting documents speak in terms of his "grossly disproportionate" sentence—the phrase used by Justice Kennedy in *Harmelin v. Michigan,* 501 U.S. 957, 997–98, 111 S.Ct. 2680, 2702–03, 115 L.Ed.2d 836 (1991) when discussing the standard of review for an Eighth Amendment proportionality claim—this Court has given Raymond the benefit of the doubt and has considered his Petition in those Eighth Amendment terms.

**14.** Three positions were set out in *Harmelin.* Justice Scalia (joined by Chief Justice Rehnquist) urged that it is inappropriate ever to engage in

sentence does not violate that Amendment. *Harmelin*'s majority found that a mandatory life sentence for a first-time felony conviction of possessing 650 grams of cocaine was not cruel and unusual punishment (501 U.S. at 994–96, 111 S.Ct. at 2701–02), and *Bocian*, 101 F.3d at 473 has quite recently upheld a 55–year sentence given to a 66–year–old man for multiple burglaries committed against elderly persons. Those decisions unquestionably confirm the reasonableness of the Illinois Appellate Court's decision in the appeal from the post-conviction proceeding, on the facts before it, that Raymond could not pose a successful Eighth Amendment challenge to his 30–year sentence for direct participation in multiple armed burglaries where his victims had been physically battered, bound, and threatened with death (as described in the opinion on direct appeal, 164 Ill.App.3d at 483–86, 115 Ill.Dec. at 523–25, 517 N.E.2d at 1209–11). Because Raymond made no showing before the Appellate Court the second time around to suggest that an Eighth Amendment challenge to his 30–year sentence would succeed (in that respect the court cited *People v. Avitia*, 178 Ill.App.3d 968, 128 Ill.Dec. 70, 533 N.E.2d 1158 (2d Dist.1989)), that Court reasonably found an absence of "prejudice" to support his ineffective assistance claim.[15]

### Conclusion

All claims that Paul has tendered to this Court in his Section 2254 Petition, and all but one of the claims that Raymond has tendered in his Petition, have been procedurally defaulted for failure properly to present those claims to the Illinois Supreme Court for review of the post-conviction proceedings. Raymond's one surviving claim—the contention that his appellate counsel on direct review was constitutionally ineffective for failure to supplement the appellate record as to the claimed disparity of his sentence in comparison with that of a co-defendant—was addressed on the merits by the Illinois Appellate Court on such post-conviction review. That decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, nor was it based on an unreasonable determination of the facts in light of the evidence presented in state court. And that decision similarly did not offend the pre-Act principles applicable to such a claim. In sum, both Paul's and Raymond's Petitions are denied and these actions are dismissed.[16]

---

15. As with the first branch of the Act's newly-tightened criteria for habeas claims, the answer would have been the same under pre-Act principles (again see n. 2).

16. Without in any way depreciating the work of counsel for either side in this litigation, this Court owes a substantial debt to its extremely able law clerk Dennis Devine, Esq. for having identified and addressed, in an excellent proposed draft opinion, many of the arcane mysteries of federal habeas law that have been dealt with here. As in this Court's prior expressions of thanks to others of its outstanding clerks, however, it must be made clear that this tribute should not backfire if a different view on the merits of these actions were ultimately to prevail—this Court's invariable word-by-word editing and revision of all of its clerks' draft opinions assure that if any errors exist here, they remain the sole responsibility of this Court and not that of its able clerk.

"proportionality" review under the Eighth Amendment unless the case is one in which the death penalty had been imposed (501 U.S. at 994, 111 S.Ct. at 2701). Justice Kennedy (joined by Justices O'Connor and Souter) suggested that the *Eighth Amendment* forbids "extreme sentences that are 'grossly disproportionate' to the crime" (*id.* at 1001, 111 S.Ct. at 2705). Finally, Justice White (in a dissent joined by Justices Blackmun and Stevens, and by Justice Marshall in a separate opinion, *id.* at 1027, 111 S.Ct. at 2718–19) found the three factors of *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983)—(1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions—to be the appropriate test for an Eighth Amendment violation (501 U.S. at 1018, 1027, 111 S.Ct. at 2718–19).